Okay, Mr. Kelly. May it please the Court, Peter Kelly here on behalf of Plaintiff Appellants Yvonne Benavides and Bettina Littel. We are here on an appeal of a 12B6 dismissal of a case, and I say that not to go over things the Court is already familiar with in the record, but rather to focus the Court's attention on precisely where the district court's analysis went wrong. And you can find on approximately page 10 of the slip opinion, page 76 of the record, where the Court basically imports the holdings from the Turner versus the Thomas v. Roberts case out of the Eleventh Circuit. Now, the HISD relies very heavily on that case, and the Court cites it throughout But the crucial distinction here is that Thomas was a summary judgment case. It was not a 12B6 analysis of the pleadings case. And you can almost play a mind game and go to Thomas, and instead of just read out every sentence, every instance where they used the word demonstrate. Pardon? Play a what sort of game? A mind game, a mental exercise. You can go to Thomas, remove the phrase demonstrate or prove or proven or sufficiency of the evidence, and instead go to substitute, allege allegation. The focus of this analysis, what the district court's analysis should have been and what this court's analysis should be, are what are the plaintiff's allegations, not what was demonstrated, not what was proved. That's for summary judgment. Sotomayor's trial incident, failure-to-train case? Yes. It was not widespread pattern. This is a failure-to-train case. And you're saying, is there any other way you distinguish Thomas, or is it just saying to us, well, we're likely to lose under the same standard, but we've plausibly stated a case, give us more time? Yes. We can distinguish Thomas very easily, actually. If you start reading through Thomas, they cite to one particular aspect of Connick, that where the one sentence of Connick where it says, ordinarily, you have to have a pattern of abuse. But then Connick goes on for five, six pages explaining the exception to that. It's almost as if the Thomas court started reading Connick, got to that sentence, and just turned the page, and just closed the book. So we — pardon? Inflated the two. Required single to require a pattern, which makes no sense. But, yes. Required single, and we also have the exception set forth in Connick where it's an obvious result. It's an obvious, predictable result of what's going to happen if you're not going to have training. Specifically, if we look at the person who is in charge of the search, Ms. Higgins, who was assistant principal, who was in charge of student discipline, had no training at all in how to conduct searches, you would have to say that it is a predictable, very predictable outcome that if the person, if the administrator in charge at the school, in charge of student discipline and, therefore, student searches, does not know how to perform a constitutional search, it is predictable that there will be unconstitutional searches. And here, it's pretty clear. I mean, I can rely on Thomas that the searches here were unconstitutional. Well, the standards provided by the independent school district talked about what was required for a search, including reasonable suspicion, et cetera. I mean, how much training is enough training? How many hours were they supposed to give? Well, that's another interesting question, Your Honor. We're not alleging that there was inadequate training. We're saying that there was no training at all. And there's no indication that they were ever briefed on it, whether it was explained to them. I mean, it's almost ironic that they object to our claim for injunctive relief by saying it's just an obey-the-law injunction we're seeking, when the instructions that are given in the HISD manual are just obey the law. Don't be unconstitutional. They don't define the terms. They don't do anything. There's one specific portion where it talks about obtaining consent, but it doesn't say anything about what constitutes a reasonable search, when you're searching for contraband, when you're searching for money, anything like that. Those guidelines are not written, and it's not part of any training. And we specifically allege in the petition that there was no training, and that lack of training led to this impermissible search. I mean, just the fact that the written policies state that you can only have a search if there's one — if there is contraband. Contraband is defined as weapon or drugs, that sort of thing. Nowhere is it permissible to have a search for missing money. Obviously, Ms. Higgins was not trained in that. Otherwise, she would not have had the search. So the failure to train, the absolute failure to train — this is not inadequate training. Now, I understand if we were alleging inadequate training, we would have to say — we might have to allege specifically why the training was inadequate. We'd have to have videotapes instead of just — instead of spoken word instructions. But we're not alleging inadequate training. We don't have to go into that detail, because there was no training at all. Why wouldn't stolen money be contraband, under anybody's reasonable understanding? The HISD does not define stolen money as contraband. And this goes into the analysis when you start going into a TLO and a Safford Independent School District. It goes into the reasonableness of searches, reasonableness of strip searches. Well, are you saying that no stolen property would constitute contraband? I mean, what if they were looking for stolen jewelry or stolen cell phones or anything else of value? None of that, in your view, would reasonably fit within the word contraband? Well, it's not necessarily my view. I think it's the view of the U.S. Supreme Court in Safford and TLO, when the reasonableness of the search is — must be adjudged in relation to the threat posed to other students. So it's okay to have a full strip search if you're looking for a knife, but not necessarily if you're looking for ibuprofen or stolen money. The stolen money does not pose a threat. So the reasonableness of the search, the scope of the search, is determined in part by what you're searching for. Yeah, Safford hints that it's not really clear what the harm they're talking about. But I agree with you. It doesn't seem to be just stolen property. It implies it has to be a harmful instrument, or maybe marijuana would be harmful. It's a little bit — What was the — do you know what the breakdown in the Supreme Court decision was in Safford? Not off the top of my head. But there was — there was — there was a split on that. But the — But sort of the contraband point is — I don't really see it as that relevant here. I don't — I don't think it's relevant here. They may have been confused about what contraband is or isn't. But we're not talking about the object of the search. That wouldn't make the search legitimate, maybe, arguably, if it were harmful. We're talking about the method here. Well, the reason I discussed contraband, the reason I raised that, is that there was no training on what contraband is. Right. So even if it were relevant in their mind, there's no training. So how does the HISD employee know what's a reasonable search to conduct if they don't even know what contraband is? And if they — you know, and obviously, they didn't know that HISD prohibits searches for missing money and not for — and not for weapons. I mean, it's just an example of how the training — not the training failed. The absolute lack of training led to violations of constitutional rights. You reminded us, properly, that this is on a motion to dismiss. So is there — if this were remanded, would there be discovery that you would be seeking? If so, what would be the fact issues? Well, there was some discovery conducted. There were sort of two tracks going. There was the motion track, and then there was some paper discovery that was going on. One of the key things we'd want to do is take depositions to figure out, were there actually — was there a pattern in practice of strip searches among other schools? They did an email to various HISD, but this is an example of the transgressor being in charge of keeping his own records. You know, they asked HID principals, have you done any improper searches? You don't mind, because I'm interested in the question he asked. What would be a relevant fact if the only available theory were a single-incident city of Canton theory? What would be the relevant facts you would discover, other than practice 200,000 kids over what number of years? Well, it would be the extent that training was given, and whether training — we have found no evidence of any training, but we would want to nail that down. And I will point you specifically to what we would want to flesh out, and that is on the record on page 96, and it's in response to interrogatory number 14, which said, please state the date HISD first adopted any policy regarding searches. Please state the date HISD first implemented any instruction and or training for its agents. Clearly focusing on training, how much training was given, when did you start instructing them? The answer in its entirety is the district is still researching to determine when it first adopted a search policy, but it's had a policy regarding student searches for at least the last 15 years. Nothing regarding training, nothing regarding instruction. We would want to flesh that out, and if we could flesh that out, we would probably get passed a summary judgment. We would have sworn testimony from the defendant about their absolute lack of training, and their knowledge that perhaps lack of training might be necessary. Your answer was that? Pardon? Was that in the set of interrogatories you attached to your First Amendment complaint? Yes, Your Honor, it is. Which interrogatory number? Interrogatory number 14. It's on the very last page. It's record page 96. But their sworn response to our question about training was to say we had a policy and we're still searching for it. So to add, I mean, that's just one example of what we would want to look at in depositions and perhaps do a motion to compel to get a fuller answer to that. So, yes, fuller discovery would help us get past the summary judgment. We would not be going up on exactly the same. I don't mean to bind you to every detail, but just cover generally the categories of things that you believe you would be reasonably entitled to have discovery on. Well, for instance, we would like to do some oral discovery, do some depositions, some further inquiry into whether or not the other strip searches are improper, unconstitutional searches occurred at other schools in HISD. So all we have is a self-reporting response to an e-mail. We'd want to do further investigation into the ---- Well, the interrogatory answer was we sent an e-mail to other schools, to other principals, and none of them reported anything back. And there's a fundamental problem with that is, as I mentioned earlier, you're asking the possible transgressors to report their transgressions. Well, we made that part of your complaint by attaching those interrogatory answers to your complaint. So that forms part of the Rule 12b-6 analysis. Well, it forms part of the 12b-6 analysis, but that doesn't necessarily mean it's ---- you know, our allegation is still there that they ---- actually, we don't rely on an allegation of widespread practice of searches, of unconstitutional searches, but we still think there's a possibility that they did occur. And we would have the right to discover that because that would help shore up our relying on simply the lack of training and the predictable outcome from the Connick and City of Canton cases. The school district has accepted fully there was a Fourth Amendment violation. It seems everybody agrees that there was unconstitutional searches. What was it? What was the violative part? Was it no reasonable suspicion as to how many girls were there, 20? No reasonable suspicion. What we were talking about earlier in the Safford issue, you know, was this something you can really do a strip search for? And it was a violation of their Fourth Amendment rights to have that type of search for missing money. So that constitutes the unconstitutional. And that has not been ---- that was not really contested anywhere, either in the district court or here, that the search was. And it's on all fours with the Thomas case, too, that that search was, you know, upon which the HISD relies very heavily, where that search was deemed to be unconstitutional. So clearly unconstitutional search as to 20 roughly 12-year-old girls because there's property that's missing. This is the scenario everyone agrees to. Classroom, money's missing. School says, okay, all 20 girls, we're going to strip search you. And they say that's unconstitutional. And the issue is whether or not the school district's liable because it didn't train them, yet it authorized that type of strip search. That's essentially the situation. I mean, I would reframe the question. The issue is whether we have the right to ask the jury if the school district can be held liable. Because both City of Canton and Connick were jury trials. And, you know, in City of Canton, they analyzed the defects in the jury questions. So these are jury issues. And they're not right for summary disposal on 12b-6. Clearly, we have the allegations to get past a 12b-6 motion. And we need to gather the evidence and get before the jury. And we, you know, I'm appointing to you specifically what evidence we can gather that would ---- After City of Connick, there haven't been too many single incident failure to train cases. What's the one from any circuit that you think is the most insightful in analysis? There have not been many at all. There have been a couple of references in some unpublished district court opinions, but I have not really found any ---- Your answer might be, but there have been very few circuits that have upheld at the motion-to-dismiss stage, too. Well, that is, I have not found any 12b-6 cases on this issue. Right. I mean, they all seem to be summary judgment or after jury trials. And I can refer you to, I mean, if you look at our petition, it's record page 70, paragraph A in the top. We specifically talk about how defendant HIST acted with deliberate indifference towards the rights of its students by failing to train or instruct. And that is the adoption of the policy. That is their unspoken policy or custom to not train on searches. And ---- What are your allegations as to why that is, quote, deliberate indifference, close quote, other than saying because they didn't conduct training? Well, this ties back into their interrogatory response. They've been doing it for 15 years and not training. And there's been, according to their interrogatory answer, one other search incident. But that doesn't mean the possibility for it isn't there or that it's not predictable that the ---- I wasn't suggesting. I just asked you what is your basis for saying deliberate indifference? Well, first of all ---- What allegations do you have in your First Amendment complaint that this constitutes deliberate indifference? Well, we have the very plain statement that they acted with deliberate indifference, the fact that they're given absolutely no training at all, that apparently this has been going on for 15 years. Further, this Court is allowed to make reasonable inferences that this practice is, you know, take inferences from the complaint that if this practice has been going on so long that it must be intentional on their part to not have any training. I mean, their policy is literally just an obey the law. It's a summary of the TLO opinion, you know, half the syllabus. Let me just posit a hypothetical. If the school district ---- and I'm not arguing it. I'm not addressing the Rule 12b-6. I'm just trying to understand your position. If the school district was not aware or did not think there was a problem about searches, it could not be deliberate indifference, could it? If it felt everything was fine, it's not deliberate indifference. I don't know if ---- I would disagree with you to the extent that the school district ---- I mean, this is a large urban school district, and it's the largest in the state of Texas. And it defies my imagination to think that the school district did not think that there would be the possibility of searches at high schools and middle schools and even elementary schools, and that they could get away with not having training protocols so that the very administrators that are in charge of student discipline don't know how to discipline the students constitutionally. It just seems patently obvious to me. All right. Thank you, Mr. Kelly. You've saved time for your vote. Ms. Bailey. Good afternoon, Your Honors. May it please the Court, my name is Rebecca Bailey, and I, together with Chris Gilberts, my right, represent the Appalachian Independent School District, who I may refer to as HISD in this matter. Your Honors, what appellants are attempting to do here is overrule years of well-settled precedent and bootstrap respondeat superior back into municipal liability. But before I get into the particulars of municipal liability, I'd like to highlight three factors that are extremely important in this case. And first, while this is an appeal of a Rule 12b-6, that dismissal wasn't granted until after the appellants had been offered one opportunity to replead to address some of the issues in our first motion to dismiss. Also, it wasn't granted until after the discovery deadline had passed and there were no motions filed requesting an extension of that deadline. It was granted after the appellants had conducted written discovery and after filing an amended complaint, which they attached four exhibits obtained through discovery. And I think that while Thomas B. Roberts has all of the same facts as this case, except for the amount of money that went missing, it was decided on a motion for summary judgment, but to distinguish it on those grounds I think is a little misleading based on the stage at which our lawsuit was decided. Were there any requests in the record so far for depositions? There were discussions about that, and we offered to extend the deadline for depositions to be conducted, and that never went forward. Ms. Bailey. Yes. In your briefing, as I understand it, in addition to conceding that the search violated the Fourth Amendment, you conceded that the search violated the school district search policy. Correct. And my question to you is, as I can tell from the briefs and parts of the record, there seemed to be three or four different policies that the school district was operating on. They were labeled legal, regulation, some school guide, et cetera, et cetera. And one of your policies said searches could be conducted of clothing and pockets, and another one, though, said searches could be conducted of students. So you've got one specific policy, and then you've got one general policy, and you're conceding that this search violated your policy, so I assume you're saying searches of students of this type are not permitted. Correct. We are stating that. So they can go beyond so they cannot go beyond searching pockets or clothing. Under certain circumstances, but the policies in this case were clear and unambiguous. The policies addressed the searches of students to only be permissible if there is evidence of contraband present. And contraband is specifically defined to include things like drugs, weapons, alcohol, things that have some kind of element of danger or threat to the students and do not include the $50 that was at issue in this case. You've just added that. It doesn't define some element of danger. That's the common element that runs throughout. That's your interpretation. That's my interpretation. Stolen property under Texas law would be contraband. Okay. Well, the specific definition that is cited in our board policy does not include stolen money. And if you look at the definition of that ---- I mean, if you'd written it that way, you can go beyond clothing and property. If there's an element of danger, all of this might make sense. Then it would be unconstitutional, but the policy would have told the teachers it's got to have some danger element. If what you just said was in the policy were in the policy, the school district would have less exposure. But you don't tell them that. Well, that may be the case, but there's also a higher standard that's applicable to school districts in this case, and that's the standard that's set forth in Monell. But as far as the discretion that's allowed under board policy, the Pembarby City of Cincinnati, the Supreme Court of the United States, ruled that the fact that official has discretion in the exercise of particular functions does not automatically give rise to municipal liability based on the exercise of that discretion. I mean, I originally viewed this case in sort of very curious about the question you were just asked by Judge Barksdale. It would seem to me the specific would modify the general, and you would come to us and say our school teachers cannot take a class, this is a choir class, a choir class of schoolgirls that are preteen and strip them all because someone can't find something. I would think you'd be saying we have a specific provision that tells teachers clothing, property, outer garments, with reasonable cause, and that implies you can't strip search without even reasonable cause. But you're telling us your position to us in briefing and in oral argument is that, in fact, they can strip search when property goes missing. If it's contraband. That's your position. If it's contraband. Our position would be that, as stated in board policy, which, yes, we do have in the State of Texas, we have our legal policies and our local policies. Legal policies usually track the language of the law. My question, I think, is pretty simple. Is it your interpretation of these policies that teachers can strip even 12-year-olds when property goes missing? That's incorrect. What's the limitation? The limitation is there must be individualized suspicion, which was not present here. You have to have reasonable suspicion as to each student, and that was absent here. So, again, if you have reasonable suspicion that a kid has stolen some money, the school policy is you can strip search. Can you do a body cavity search? No. No, but where does it tell them they can't do a body cavity search? That's incorrect. That would be an incorrect interpretation of the word contraband. So you're resting it all on contraband? Yes, Your Honor. And you don't tell them that stolen property is different than a gun or than drugs? Well, contraband is specifically defined as is reasonable suspicion, and the basic norms of human conduct would dictate that a search of this nature would be improper under the circumstance, and a municipal governmental entity like HISD is entitled to rely in some sense on that, on those basic norms of human conduct. The reason I would think that it is very obvious you will get exactly this type of violation if you don't tell teachers at all how far they can go is that it would be pretty clear you would say if there's probable cause of a weapon, and even then, it's got to be a different gender person doing the search, and they've got to have privacy. You've got to call parents first. There are about seven pretty simple training, but as far as I understand, your position now is that if, quote, contraband goes missing, a 12-year-old choir girl can be strip searched, body cavity even, by a male teacher because the guideline doesn't say anything about women? Is that your position? That is not our position. How would a male teacher read these guidelines with no training and know that he couldn't do it, even if it were marijuana or contraband? There's no concession here that there was no training at this — in this case, but there were specific — But we don't know. That's the whole point, that we don't know that. There were clear policies that were provided to school administrators for their review in this case that specifically defined the situations in which a search would be considered improper. What policy says that a male teacher can't strip search a girl? Where does it say anything about that? It would be in the policies attached to the amended complaint and would be clearly defined in those policies, but I think that that goes outside the issues because I think under Monell, we have to show that the governmental liability — that there was only — there was some kind of custom policy practice behind the school district that was a moving force of this violation, and they tried to do that here. The district court correctly determined that municipal liability does not attach to HISD in this case, and the mere fact that the search here exceeded the permissible scope of school searches does not automatically give rise to liability in this case. I think their single incident theory is the hypothetical given in City of Canton. You can't give police guns and not tell them anything about how to use their guns. Here, they're saying you can't tell teachers they can strip search boys and girls without telling them anything about when, who, where, parents, privacy, anything. That's their theory, and they're saying if you don't tell them anything, it's obvious and likely you'll get violations like the one your client is conceding happened here. Well, and I would say that the City of Canton also says that the mere fact that you have an employee who makes a mistake and interprets your policies incorrectly doesn't give rise to liability, and they specifically say that a particular officer may be unsatisfactory trained will not suffice to fasten liability on the city. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training sufficient to equip him to avoid the particular injury causing conduct. Such a claim could be made about almost any encounter. And they go on to quote Rehnquist to say that a section 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident. You can always say that something could have been done differently. And, of course, there were a lot of things in this case that could have been done differently, but that doesn't give rise to municipal liability on the part of HISD in this case. The second factor that I wanted to highlight for the Court is that appellants have not alleged that HISD conducted any other class-wide or group-strip searches occurring prior to the one at issue. They do cite to one other search they condemned was improper, but this other search occurred after the instant search, so the Board was not aware of that on the day of the search at issue. And it was also factually dissimilar to the instant case. That was a search of one student where an iPad went missing, so individualized suspicion was not an issue. And that search was also only discovered as part of the survey conducted by us when we sent an email to the principals of all the schools that was conducted in connection with this lawsuit. And the third I want to point out is that context is an issue in this case. There's case law from the circuit in Peterson v. City of Fort Worth and Panetta v. City of Houston that state very clearly that in cases such as this where governmental liability is at issue, that context, that being the size of Houston and the number of incidents that have occurred, are relevant. And here we're talking about two factually dissimilar searches in a five-year time span in the largest school district in Texas. And I would point to Peterson v. City of Fort Worth and let this Court know that in there, there were 27 complaints of excessive force filed between 2002 and 2005, and that they highlighted that any kind of pattern of prior incidents requires similarity and specificity. Prior incidents cannot be for any and all bad or unwise acts, but rather must point to the specific violation at issue. So to the extent that they'd like to conduct additional discovery, it's unclear what they expect to learn more about this case, since we have already what they could have done is an investigation on their own, which is akin to the discovery we sent out to all the principals, and we've given them all the information that we have, and they've stated that they don't trust our responses. So going into that in a little bit more detail, tell us as an officer of the Court what happened here, and I'll try to get some more detail from Mr. Kelly on the rebuttal. Specifically, I mean, if we were to remand in this case, it would be presumably, among other things, to tell the district court to permit some discovery. But summarize for us what discovery was requested and or permitted already in this case, because I'm having a hard time understanding the answer to that and what additional discovery might reasonably be permitted. Yes, sir. There were requests for production submitted to the school district and interrogatories, and all of that was requested before the dismissal was granted and the discovery deadline had passed. We had a conversation about extending that deadline, and we talked about allowing them to depose some of the principals, and that deadline passed, and we were, and the judge granted the dismissal, and so that conversation ended. All right. Now, that's a little bit fuzzy to me. You offered to provide depositions. Was there any response to that? Did they decline the offer? Are you saying that the court went ahead and ruled before that offer could be accepted and or acted upon? The latter is correct. The judge ruled before. There was no declination of the offer. It was a conversation that ended by virtue of the judge's dismissal. What about the other discovery, other than depositions? Was the other discovery completed, that is to say, answers to interrogatories, production of documents, whatever? Yes, Your Honor. Those were all completed. They received their responses. We also conducted discovery and submitted those to them and received responses. Yes. So it's a bit contradictory to say that they are wanting to conduct additional discovery in this case when they had a full opportunity at the lower level. Again, summarizing what I hear you saying, correct me if I'm wrong because I'm trying to get this straight, is that, in your view, all discovery had been completed except for depositions. Is that fair? That's fair. And those depositions were not sought, although they had the opportunity to get those depositions, correct, Your Honor? But while the discovery deadline was running, your motion to dismiss under Rule 12b-6 was pending. Yes, correct. And I had those dates in front of me. But, yes, the discovery deadline had passed somewhere between the filing of the amended complaint and the ruling on the dismissal. Yes. Yes. So I think the critical issue that needs to be remembered here is that appellants must be able to show, under their failure-to-train liability theory, which is extremely narrow, that the need for more different training was so obvious to the district's board of trustees, who it's undisputed is the policymaker in this case, that they were deliberately indifferent to the need for more or different training. And that just can't be the case where, on the day before the searches at issue, there were no allegations that there had been any improper searches known to the school board. And that would have been— The operative allegation in the First Amendment complaint to show deliberate indifference, other than perhaps using the term deliberate indifference. Deliberate— Indifference. Yes. What is the question? What is the operative allegation or allegations in the complaint equating with deliberate indifference? Is there anything in the complaint, this was so obvious to the board, they had to know they needed training? Is there anything of that type in the complaint? There—and it is our belief that no, because there's nothing that could be made obvious when there's no awareness by the board of trustees that there was a problem in the first place. I think what Judge Barksdale is asking is, did the complaint just use the conclusory term deliberate indifference, or was there any more detail in terms of the allegations of what might have constituted deliberate indifference? Well, correct. And that's our position at this point, that their allegations right now do not meet the standards set forth in Ashcroft v. Eckball and Bell v. Twombly. Right now, it's our position that they've pled boilerplate legal conclusions without facts to support their conclusions. And the facts pled simply don't cross the line from conceivable to plausible. And for those reasons, too, we believe that their request for leave to amend was also properly denied. They state that they want to do these discovery about other searches, not just strip searches, but that's problematic for some of the reasons that I've already stated. And also because they simply cannot show a pattern of unconstitutional behavior merely by stating that the school administration has searched other students because those other searches, such as the one in 2013, are not relevant to claims in this lawsuit. In the policy where it says school officials may search a student's outer clothing, pockets, or property by establishing reasonable cause or securing consent, why doesn't that policy explicitly tell these teachers they couldn't go beyond clothing, especially if they didn't have even reasonable cause? Well, unfortunately, in this day and age, there needs to be some discretion by school administrators that would allow those types of searches to maintain the safety in our school. They say that's important, but why would Monell liability attach here if the policy the teachers are reading tells them that's all you can do? Well, first, that's only one portion of the policy because you've got to — But it's the more specific, and the only other ones just say you can search with reasonable cause. But you have to read it in conjunction with the definition of reasonable cause that's supplied by the board policy as well as the definition of contraband. Okay. So, again, it is just — you've already said this. I just want to clear it up. Your position today is that — and let's assume it's contraband. If there's reasonable suspicion that, you know, a small amount of marijuana goes missing in a choir classroom like this one, your position is they can strip search all the 12-year-olds. No, Your Honor, because there is no individualized suspicion present in that situation. That would exceed the scope of the search. And so I think it's important to remember that this search, the search at issue in this case, was improper under board policy and not because of board policy. Okay. And so I think, you know, in this case, we do have to show that there was some awareness by the board that there was a need. And in this case, it just — it was not obvious to the board of trustees. What in the policy tells them where they have to stop if it's just individualized suspicion as to one girl? Can they do a body cavity search? Does the — anything in what the school has given them instruct them as to whether a male can do it or whether they can do it at all? That is, to my knowledge, and I would have to reread it, but there is some discretion that's allowed, and that's on purpose. Discretion for males to do body cavity searches if individualized suspicion is found. No, again, I think that goes back to the basic norms of human conduct, that that would be outside the scope of a reasonable search. You have to have reasonable suspicion that an individual girl has — is in possession of contraband. And in that case, that would be a reasonable search in violation of the Fourth Amendment. And I would also state briefly that the district court — Your time has expired now. Thank you, Your Honor. Thank you. Kelly, you save time for rebuttal. Do you have anything to clear up on the discovery issue of what was just talked about in terms of what has been done and what remains to be done, in your view? I would be straying outside the record, the record on appeal, to answer some of those questions. But I will point out that the parties did agree to a continuous, postponed trial. They both represented to the Court that there were ongoing settlement discussions. The parties both agreed that there were pertinent depositions that needed to be taken. And they had not been taken as of the time that the 12b-6 motion was responded to and ultimately ruled on. But there is — obviously, the parties did agree that there are — they used that word — agreed language, pertinent depositions to be taken. So there is discovery that can be done. If it goes back down, then the clock will restart and discovery can finish up. I'd also like to address the issue of the deliberate indifference, particularly under the common law. The common law does not reward willful ignorance. That can be a basis for a finding of gross negligence. Negligent ignorance can be a finding of negligence. You can't turn a blind eye. And it's clearly what HISD has done here. The fact that they do not keep records of this, they don't even ask as a matter of course, the principals don't have to fill out a report at the end of the year, have you done any searches or have you had to, you know, look at students for contraband or missing money or something. The simple fact that they are willfully ignorant, they do not keep the records, they had to go out and manufacture something. Kennedy. Wait a minute. Wait. They're willfully ignorant? They were not asking the questions. Well, do you charge that in your complaint, they're willfully ignorant? That is a species of deliberate indifference. No, sir. My question is, do you allege in your First Amendment complaint they were willfully ignorant? We do not state those words in the complaint, but I'm saying that is — In fact, again, you attach their interrogatory answers in which they said, we only know of one incident. They also said they do not keep records of it. Well, they asked the principals. Again, you're contained or cabined within your First Amendment complaint. You elected to attach those interrogatory answers to your First Amendment complaint, I suppose because the first complaint, the original complaint, had been dismissed. We attached the interrogatory answers. They admitted that they do not keep records of these things.  That would be an ongoing willful ignorance of whether or not these searches are occurring. And that constitutes a deliberate — I mean, indifference is you don't care if it's happening. You're not asking if it's happening. Can you give us some other examples of where you think that schools, matters of such importance, schools ought to keep records? I know there's a world in this universe of what schools ought to keep records on, but can you think of something comparable? Perhaps fights at the school or serious illnesses or — Playground injuries. You know, do you have to get rid of the monkey bars because too many kids are breaking their arms on it? Do you have too many fights? Do you have to increase security? There are lots of different things that schools should be keeping records of so they can maintain order and discipline and safety within their schools. And I find it — I mean, it struck me as rather odd that the HIST was not keeping records. Wouldn't it make sense that they're not keeping records because they've told the teachers it's got to stop at clothing and garments and property, the point I keep bringing up, admittedly not one embraced by them? Wouldn't it all make sense if they didn't want young preteens being strip-searched without probable cause referred to the criminal system? And so the policy tells teachers don't. Here the teachers did. And school district isn't liable because their policy was clear that it stops at the edge. What's wrong with that read? Well, that's assuming — I mean, this is — I mean, it's almost assuming that the written policy is followed — the obey-the-law policy, just sort of sets out the TLO standard, is followed by every teacher and every administrator throughout HIST. And the — But I'm going beyond the obey-the-law. I mean, largely you can tell from my questions at this point and my thinking about it, I agree with you. It couldn't just be be reasonable. But if the next sentence says, and don't ever go beyond property and clothing with reasonable cause, I would have inferred that to mean the school district's telling them if you have no individualized suspicion, you certainly can't strip them down. And if that policy is in writing, then they wouldn't be liable if these teachers went beyond it. I would disagree with you to the extent that merely having it in writing is insufficient. You can have a — I mean, there is a written policy, and then there is the policy and the conduct, the ongoing — the lack of training. That taken together, you know, it's saying it and doing it are two different things. If you just say it, that's not enough. You have to do it. You have to train. You have to enact. You have to execute the policy. You have to teach your administrators. So they don't get a safe harbor by saying this is what TLO says, so you can't sue us. And I think as a matter of public policy, that that would be deleterious. No further questions? Thank you, Mr. Kelly. Your case is under submission. Before hearing the final two cases of the day, the Court will take a brief recess.